# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

CLIFTON SPEARS,          )
                              )
        Plaintiffs,      )
                              )
vs.                       )     CIVIL ACTION NO. 07-0275-CG-M
                              )
CHOCTAW COUNTY COMMISSION,  )
                              )
        Defendant.     )

## ORDER

Clifton Spears ("Spears" or "plaintiff") claims that he is entitled to relief under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") because he was not properly compensated for overtime hours he worked as a sheriff's deputy in Choctaw County.  (Doc. 1). The case comes before the court on the motion for summary judgment filed by the defendant, Choctaw County Commission ("County Commission").  The motion is fully briefed and ripe for ruling.  (Docs. 80, 81, 82, 101, 102, 108, 109, and 115).  For the reasons set forth below, the motion is **GRANTED**.

## I.     SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  As the Eleventh Circuit succinctly stated:

> A factual dispute is genuine only if "a reasonable jury could return a verdict for the nonmoving party."  United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (citation omitted).  The moving party bears the

> burden of proving that no genuine issue of material fact exists.  <u>O'Ferrell v.</u>
> <u>United States</u>, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument
> of the moving party, the district court must view all evidence in the light most
> favorable to the non-moving party, and resolve all reasonable doubts about the
> facts in its favor.  <u>Burton v. City of Belle Glade</u>, 178 F.3d 1175, 1187 (11th Cir.
> 1999).  Assuming the moving party has met its burden, the non-movant must then
> show a genuine dispute regarding any issue for which it will bear the burden of
> proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553,
> 91 L.Ed.2d 265 (1986).

<u>Info. Sys. and Networks Corp. v. City of Atlanta</u>, 281 F.3d 1220, 1224-25 (11th Cir. 2002).

The purpose of summary judgment "is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 592 (11th Cir. 1995), <u>cert. denied sub nom</u>. <u>Jones v. Resolution Trust Corp.</u>, 516 U.S. 817 (1995).

> In opposing a motion for summary judgment, "a party may not rely on his
> pleadings to avoid judgment against him."  <u>Ryan v. Int'l Union of Operating</u>
> <u>Engrs, Local 675</u>, 794 F.2d 641, 643 (11th Cir. 1986).  There is no burden upon
> the district court to distill every potential argument that could be made based
> upon the materials before it on summary judgment.  <u>Blue Cross & Blue Shield v.</u>
> <u>Weitz</u>, 913 F.2d 1544, 1550 (11th Cir. 1990).  Rather, the onus is upon the parties
> to formulate arguments; grounds alleged in the complaint but not relied upon in
> summary judgment are deemed abandoned.  <u>Road Sprinkler Fitters Local Union</u>
> <u>No. 669 v. Indep. Sprinkler Corp.</u>, 10 F.3d 1563, 1568 (11th Cir. 1994)(citing
> <u>Lazzara v. Howard A. Esser, Inc.</u>, 802 F.2d 260, 269 (7th Cir. 1986)), cert.
> denied, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

<u>Id</u>. at 599.  The "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."   <u>Celotex Corp.</u>, 477 U.S. at 323.

The failure by the nonmoving party to make a sufficient showing on an essential element of its action entitles the moving party to judgment as a matter of law.  <u>Id</u>.

## II.     FACTS

Spears was a deputy sheriff in Choctaw County from July 2002 until May 1, 2006. (Doc. 84-6, pp. 3-4; Doc. 103-2, p. 2, ¶ 4).[1] He was paid on an hourly basis. (Doc. 103-15, p. 2, #3).

Although the County Commission sets the sheriff's budget, decides how many deputies he can hire, and fixes the pay for the deputies (Doc. 84-3, pp. 2-3, ¶ 3; Doc. 103-21, pp. 4-5, 8-9; Doc. 103-24, pp. 9-10, 16, 23-24), the sheriff, not the County Commission, has the authority to hire, fire, schedule, and discipline specific deputies. (Doc. 84-3, p. 3, ¶¶ 4 & 6; Doc. 84-4, pp. 5-7; Doc. 103-24, pp. 9-10, 16). The chief deputy, not the county commission, also exercises a certain amount of disciplinary authority over the deputies and can recommend the hiring or firing of a deputy. (Doc. 115-3, p. 2, ¶ 3). The sheriff has to "get it in the minutes" of a County Commission meeting that he is hiring a particular person to work as a deputy to get the hire approved (Doc. 84-4, pp. 5, 7), but the sheriff alone decides who to hire to fill the number of positions that the County Commission allocates for him. (Doc. 84-4, p. 5). After the sheriff fires somebody, he tells the county treasurer so that she can take that individual off of the payroll. (Doc. 84-4, p. 7). There is nothing in the record tending to show that the County Commission can hire or fire a deputy on its own; its involvement is apparently limited to confirming the sheriff's decisions.

The sheriff hired Spears in July 2002. (Doc. 84-6, p. 3). At the end of Spears' employment, the County Commission wrote Spears to tell him that his employment as a deputy

---

[1]Spears stopped working as a deputy on May 1, 2006, when he was severely burned in the line of duty (Doc. 84-6, p. 3; Doc. 103-2, p. 2, ¶ 4), although his employment was not officially terminated until January 24, 2008 (Doc. 103-8).

sheriff was terminated, but it did so on the recommendation of the sheriff. (Doc. 103-8).[2] There is no evidence that the County Commission ever interfered with the sheriff's decision to hire, fire, or discipline a particular deputy.

The sheriff or his chief deputy, not the County Commission, was Spears' supervisor. (Doc. 84-6, pp. 3 and 5-6; Doc. 103-2, p. 2, ¶ 6; Doc. 103-11, p. 2, ¶ 4; Doc. 115-3, p. 2, ¶ 4). The sheriff gave Spears his assignments. (Doc. 110-2, p. 19). Spears regularly interacted with the sheriff. (Doc. 84-6, pp. 5-6). "Pretty much if [Spears] needed to know anything, [he] would have to contact [the sheriff]." (Doc. 84-6, p. 6). The chief deputy scheduled shifts for the deputies, "handled disputes between the deputies and staff and tried to address payroll issues[.]" (Doc. 103-11, p. 2, ¶ 3; Doc. 115-3, p. 2, ¶ 3). The chief deputy also saw to it that the deputies "did their jobs." (Doc. 103-11, p. 2, ¶ 3; Doc. 103-21, p. 7; Doc. 115-3, p. 2, ¶ 3). When the sheriff was out of town, the chief deputy, not the County Commission, was responsible for the sheriff's office. (Doc. 103-11, p. 2, ¶ 3; Doc. 103-21, p. 7; Doc. 115-3, p. 2, ¶ 3). There is no evidence that Spears ever reported to the County Commission, as opposed to the sheriff or the sheriff's chief deputy. If Spears encountered an unusual problem at work, he was expected to contact the chief deputy or the sheriff for advice. (Doc. 103-2, p. 4, ¶ 11). If Spears had a concern about his schedule, he raised it with the sheriff. (Doc. 110-2, pp. 18-19).

Likewise, at the sheriff's instruction, Spears reported the number of hours he worked to the sheriff's department. (Doc. 84-6, pp. 7-8, 10). Spears never discussed any discrepancies in

---

[2]The letter from the County Commission is dated January 25, 2008, and shows that Spears' employment as a deputy sheriff terminated on January 24, 2008 (Doc. 103-8), although, as indicated above, Spears apparently stopped working as a deputy on May 1, 2006 (Doc. 84-6, p. 3; Doc. 103-2, p. 2, ¶ 4). Spears' January 2008 termination was apparently done in connection with a worker's compensation settlement. (Doc. 103-9, p. 4).

his paycheck with anybody in the County Commission. (Doc. 84-6, pp. 16-17). If Spears "had a problem with the schedule, payroll, or taking time off," he would bring the problem to the attention of the chief deputy and, if the chief deputy did not resolve the problem, to the sheriff. (Doc. 103-2, p. 2, ¶ 7). Spears also testified that he had numerous conversations with the sheriff about his overtime. (Doc. 103-19, pp. 7-9). When Spears brought concerns about his paycheck to the chief deputy, the chief deputy would resolve them through the sheriff, who would either approve or disapprove of the extra overtime to which Spears felt he was entitled. (Doc. 110-2, pp. 11-12). There is no evidence that the County Commission was consulted about whether Spears was entitled to the overtime he sought. If sheriff's employees wanted to "sell" their vacation time rather than take vacation, they would make their request to the sheriff. (Doc. 103-21, p. 11). The warrant clerk, who worked in the sheriff's department, tallied time records for the sheriff's deputies. (Doc. 103-20, pp. 3-5).

Other than setting the budget for the sheriff, and, in its discretion providing the sheriff with extra funds if he requested them, the County Commission had no input or control over how the sheriff spent the money that was allocated to him. (Doc. 84-2, p. 3, ¶ 10; Doc. 84-3, pp. 2-3, ¶ 3; Doc. 103-21, pp. 15-16).

The County Commission set certain rules that, according to the chief deputy, applied to Spears' employment, including his eligibility for vacation, sick leave, and personnel policies. (Doc. 103-11, p. 3, ¶ 10). In addition, the County Commission issued a rules and procedures manual and a separate "three strike[s] and you're out" policy, both of which, according to the chief deputy, applied to sheriff's deputies. (Doc. 103-11, pp. 3-4, ¶¶ 11 and 12; Doc. 103-12; Doc. 103-23, pp. 5-6). In fact, the sheriff applied the "three strikes and you're out" policy

against the chief deputy in 2007, when he wrote a letter of reprimand for the chief deputy's file. (Doc. 103-11, pp. 3-4, ¶ 12; Doc. 103-12, Doc. 103-13; Doc. 103-14). According to the "three strikes and you're out" policy, the letter would have been the first "strike" against the chief deputy. (Doc. 103-12).

The Chairman of the County Commission eventually decided that the "three strikes and you're out" policy did not apply to the sheriff's deputies or the chief deputy because the policy "did not apply to the sheriff's office . . . because the sheriff is the one that does the hiring and firing and disciplining of his employees." (Doc. 110-2, pp. 22-23).[3] The Chairman of the Choctaw County Commission wrote the Office of the Alabama Attorney General seeking to determine the correctness under Alabama law of his decision that the "three strikes and you're out" policy did not apply to sheriff's deputies. The Attorney General's written response explained that the employment policies established by the County Commission do not apply against sheriff's deputies, unless the sheriff elects to subject his deputies to those policies. (Doc. 110-2, pp. 27-28). Specifically, "if the sheriff has not adopted these policies as applicable to the deputies, the deputies would not be subject to them." (Doc. 110-2, p. 28).

There is no evidence that the sheriff elected to subject his deputies to the County Commission's policies after the Attorney General's letter made it clear to him that the County Commission does not have authority to apply its policies against the deputy sheriffs. The sheriff

_____

[3]The chairman of the County Commission testified that he reached this conclusion during a conversation with the chief deputy. (Doc. 110-2, pp. 22-23). The chief deputy testified via affidavit that the meeting the chairman describes "never occurred." (Doc. 115-3, p. 6, ¶ 19). Regardless of whether the chairman and the chief deputy actually met, the evidence shows that the chairman took the position that the rules passed by the County Commission do not apply to the sheriff's deputies, that the Attorney General agreed, and that the parties subsequently acted accordingly.

was clear that he hired and fired deputies in his discretion, and that the County Commission's involvement was limited to approving of his hiring decisions and to removing employees from payroll after the sheriff fired them. (Doc. 84-4, pp. 5-7). There is also no evidence that Spears was ever subjected to the "three strikes and you're out" policy or to the rules set out in the rules and procedures manual. To that end, the chairman of the County Commission testified via affidavit that "[t]he Sheriff is solely responsible for hiring, firing, and disciplining [deputy sheriffs]. These employees do not fall under the [County] Commission's authority, and no personnel policies adopted by the [County] Commission apply to them." (Doc. 84-3, p. 3, ¶ 4).

The County Commission chose the benefit providers (Doc. 103-24, pp. 12-16), issued Spears' paychecks and tax documents, handled workers' compensation, explained the health benefits to the deputies and addressed problems with the health benefits, provided a certain amount of vacation time and accounted for it, kept track of sick days and bereavement days, set raises for the sheriff's deputies, and would respond, through the treasurer, to Spears' inquiries regarding his vacation time. (Doc. 103-2, pp. 3-4, ¶ 10; Doc. 103-7; Doc. 103-9; Doc. 103-10; Doc. 103-20, p. 6; Doc. 103-21, pp. 8-12). The full-time sheriff's deputies get their benefits through the County Commission. (Doc. 103-24, p. 11). Spears is on the County Commission's pension plan, which identifies the County Commission as his employer. (Doc. 103-6 ). The payroll and benefits functions for the sheriff's office were handled by the country treasurer, "for administrative convenience only." (Doc. 84-2, p. 3, ¶ 12; Doc. 84-3, p. 3, ¶ 5). The sheriff signed the "time sheets" based on which the county treasurer calculated the payroll. (Doc. 84-2, p. 3, ¶ 12; Doc. 84-3, p. 3, ¶ 5).

When the Department of Labor investigated the sheriff's office for FLSA violations in

1998, it directed its correspondence on the matter to the "Choctaw County Treasurer/Administrator," not to the sheriff. (Doc. 103-17). The County Commission also identified itself as Spears' employer on Spears' federal Employment Eligibility Verification Form (Doc. 103-4) and W-2 (Doc. 103-5).

## III.  THE COUNTY COMMISSION IS NOT SPEARS' EMPLOYER

The "maximum hours" section of the FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The "definitions" section of the FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency[.]" § 203(d). "Employ" means "to suffer or permit to work." § 203(g). An employee can have more than one employer for purposes of FLSA liability. Antenor v. D & S Farms, 88 F.3d 925, 929 (11th Cir. 1996). See also Falk v. Brennan, 414 U.S. 190, 195 (1973) (recognizing two employers for purposes of FLSA liability). The FLSA's definition of "employment" does not turn on "the common-law definition of employment, which is based on limiting concepts of control and supervision." Antenor, 88 F.3d at 929. Rather, "[a]n entity 'suffers or permits' an individual to work if, as a matter of economic reality, the individual is dependent on the entity." Id.

Different cases articulate different tests for ascertaining whether an entity is an "employer" under the FLSA. The parties focus on two Eleventh Circuit cases. The County Commission focuses on Welch v. Laney, 57 F.3d 1004 (11th Cir. 1995). Spears relies on

<u>Villarreal v. Woodman</u>, 113 F.3d 202 (11th Cir. 1997).

The plaintiff in <u>Welch</u> was a dispatcher for her local sheriff's department. <u>Welch</u>, 57 F.3d at 1007. She "reported directly to" the sheriff. <u>Id</u>. She sued, among others, certain county commissioners in their official capacities. <u>Id</u>. Like the County Commission in the case at bar, the county commissioners, acting in their official capacities, argued that they were not employers as that term is defined in § 203(d). The district court dismissed the claim against the county commissioners pursuant to a Rule 12(b)(6) motion, which the court of appeals affirmed. <u>Id</u>. at 1007, 1011. After pointing out that a defendant's legal status as an "employer" is a question of law, the court explained:

> The Act itself defines employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee and including a public agency . . . ." 29 U.S.C. § 203(d) (1978). The former Fifth Circuit considered "the total employment situation" in determining whether an entity qualified as an "employer" under the Act. <u>Wirtz v. Lone Star Steel Co.</u>, 405 F.2d 668, 669-70 (5th Cir. 1968). In particular, the court asked, inter alia,: "whether or not the employment [took] place on the premises of the [alleged employer]; how much control [did] the [alleged employer] exert on the employees; and, [did] the [alleged employer] have the power to fire, hire, or modify the employment condition of the employees?" <u>Id</u>.

<u>Id</u>. at 1011 (alterations in original).

The court decided that the commissioners were not the plaintiff's "employers" because the plaintiff worked in the sheriff's premises rather than the commissioners' premises, the commissioners did not exercise control over the plaintiff other than for setting the salary and employment classification for the plaintiff's job, and the commissioners could not hire or fire the plaintiff. <u>Welch</u>, 57 F.3d at 1011. The Eleventh Circuit recently clarified that, in order for an entity to qualify as an "employer," it must utilize the authority it has over the employee. <u>Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.</u>, 515 F.3d 1150, 1160-61 (11th Cir. 2008).

"[U]nexercised authority is insufficient to establish liability as an employer." Id. at 1161. In the

case of a corporate officer, for example, the "officer 'must either be involved in the day-to-day

operation or have some direct responsibility for the supervision of the employee.'" Id. at 1160.

Villarreal decided as a matter of first impression in this judicial circuit "that pretrial

detainees who perform services at the direction of correction officials and for the benefit of the

correctional facility are not covered under the FLSA," and articulated a slightly different test for

determining whether an entity is an "employer." Villarreal, 113 F.3d at 204.

> Under the FLSA, an "employee" is defined as "any individual employed by an
> employer." 29 U.S.C. § 203(e)(1). An "employer" includes "any person acting
> directly or indirectly in the interest of an employer in relation to an employee and
> includes a public agency, . . . ." 29 U.S.C. § 203(d). To "employ" is defined as to
> "suffer or permit to work." 29 U.S.C. § 203(g). The Supreme Court has held that
> courts should apply these terms in light of the "economic reality" of the
> relationship between the parties. Goldberg v. Whitaker House Co-op., Inc., 366
> U.S. 28, 33, 81 S. Ct. 933, 936-37, 6 L. Ed. 2d 100 (1961).

> The economic reality test includes inquiries into:

>> whether the alleged employer (1) had the power to
>> hire and fire the employees, (2) supervised and
>> controlled employee work schedules or conditions
>> of employment, (3) determined the rate and method
>> of payment, and (4) maintained employment
>> records.

> Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir.
> 1983).

Id. at 205 (alterations in original).

In the context of deciding whether two putative employers employ the same employees -

whether the employers are "joint employers" - the Eleventh Circuit uses a more involved test.

Several factors in this test overlap with the factors outlined in the Welch and Villarreal cases.

Neither party argues that Spears was jointly employed by the sheriff and the County

Commission, but the court finds the analysis instructive.

The courts frequently use this more involved test in the context of agricultural employment, to decide whether workers are jointly employed by the entity owning the farmland and also by the entity supplying the workers. Such agricultural cases may involve the FLSA and also another statute, called the "Migrant and Seasonal Agricultural Worker Protection Act" or "MSAWPA." The MSAWPA defines "employ" "by reference to FLSA[,]" <u>Aimable v. Long & Scott Farms</u>, 20 F.3d 434, 438 (11th Cir. 1994), so, if a an entity "employed" individuals pursuant to one of the statutes, it "necessarily employed them under the other." <u>Antenor</u>, 88 F.3d at 929. Not surprisingly, then, the courts apply the same test to determine employment under either, or both, statutes. <u>See, e.g.</u>, <u>Aimable</u>, 20 F.3d at 439; <u>Antenor</u>, 88 F.3d at 928, 932-38; <u>Martinez-Mendoza v. Champion Int'l Corp.</u>, 340 F.3d 1200, 1203, 1207-09 (11th Cir. 2003). The test is not limited to the agricultural employment context and has been used to determine "joint employment" in other business situations. <u>See, e.g.</u>, <u>Beck v. Boce Group, L.C.</u>, 391 F. Supp. 2d 1183, 1187 (S.D. Fla. 2005) (applying similar factors in joint employment case outside of the agricultural worker context). The factors the courts consider are:

> (1) whether the agricultural employer has the power, either alone or through the [entity supplying the workers], to direct, control or supervise the workers or the work performed (such control may be either direct or indirect, taking into account the nature of the work performed and a reasonable degree of contract performance oversight and coordination with third parties); (2) whether the agricultural employer has the power, either alone or in addition to another employer, directly or indirectly, to hire or fire, modify the employment conditions, or determine the pay rates or the methods of wage payment for the workers; (3) the degree of permanency and duration of the relationship of the parties, in the context of the agricultural activity at issue; (4) the extent to which the services that the workers rendered are repetitive, rote tasks requiring skills that are acquired with relatively little training; (5) whether the activities that the workers performed are an integral part of the overall business operation of the agricultural employer; (6) whether the work is performed on the agricultural employer's premises, rather than on

premises that another business entity owns or controls; and (7) whether the agricultural employer undertakes responsibilities in relation to the workers that employers commonly perform, such as preparing and/or making payroll records, preparing and/or issuing pay checks, paying FICA taxes, providing workers' compensation insurance, providing field sanitation facilities, housing or transportation, or providing tools and equipment or materials required for the job (taking into account the amount of the investment).

We will consider all of the enunciated factors as guidance, with "the weight of each factor [depending] on the light it sheds on the farmworkers' economic dependence (or lack thereof) on the alleged employer, which in turn depends on the facts of the case."

Charles v. Burton, 169 F.3d 1322, 1329 (11th Cir. 1999) (first alteration added, second in original).[4]

---

[4]The pattern jury instructions for the Eleventh Circuit provide the following instruction on ascertaining whether an individual is an employee of a particular entity.

It is not always clear under the law whether a person is an "employee' or not, or who the "employer" is. Some people, for example, perform services for others while remaining self employed as independent contractors. Others are clearly "employees," but a question may arise as to who the employer is; and, in some instances, an employee may have joint employers, that is, more than one employer at the same time.

So, a preliminary issue for your decision in this instance is the question whether the Plaintiff was an "employee" of the Defendant [ABC Corporation] as well as, perhaps, an employee of _____.

You should resolve this question in light of the economic realities of the entire relationship between the parties, and should consider each of the following factors to the extent you find that a particular factor is applicable to the case:

     (1) the nature and degree of control of the employee, and who exercises that control;

     (2) the degree of supervision, direct or indirect of the employee's work, and who exercises that supervision;

     (3) who exercises the power to determine the employee's pay rate or method of payment;

As the use of slightly different tests in different contexts suggests, the inquiry into whether an entity is an "employer" under the FLSA "does not depend on technical or isolated factors but rather on the circumstances of the whole activity." Perez, 515 F.3d at 1160 (internal quotations omitted). See also Welch, 57 F.3d at 1011 (court should consider "the total employment situation in determining whether an entity qualified as an employer under the Act") (internal quotations omitted); Villarreal, 113 F.3d at 205 (courts should look to the "economic

---

(4) who has the right, directly or indirectly, to here, fire, or modify the employment conditions of the employee;

(5) who is responsible for the preparation of the payroll and the payment of wages;

(6) who made the investment in equipment and facilities used by the employee;

(7) who has the opportunity for profit and loss;

(8) the permanency and exclusivity of the employment;

(9) the degree of skill required to do the job;

(10) the ownership of the property or facilities where the employee works; and

(11) the performance of a speciality job within the production line integral to the business.

Consideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative. Nevertheless, the extent of the right to control the means and manner of the worker's performance is the most important factor.

ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS, (CIVIL CASES), 1.10.4.2, Miscellaneous Issues Joint Employers (2005). The annotations and comments to the instruction indicate that it is derived from Aimable, Antenor, and Charles, all of which considered the whether an entity was an "employer" for purposes of the FLSA and/or the MSAWPA.

reality" of an employment relationship, which "includes inquiries into" the factors listed above).

The court will consider the seven factors enunciated in <u>Charles</u>, which incorporate all of the factors in both the <u>Welch</u> and <u>Villarreal</u> cases.

**1.      Whether the County Commission Had the Power to Direct, Control, or Supervise Spears Directly or Indirectly**

This factor considers "specific indicia of control," including "direct employment decisions such as whom and how many employees to hire, whom to assign to specific tasks, and how to design the employee's management structure," in addition to "several other indicia of control, including: when work should begin on a particular day; whether a worker should be disciplined; whether the [County Commission is] free to delay or stop [Spears] directly from continuing [his] work; and whether the [County Commission] could assign work to [Spears] indirectly." <u>Charles</u>, 169 F.3d at 1329. This factor overlaps with the second factor from <u>Welch</u> and <u>Villarreal</u>.

The sheriff, or his chief deputy, decided who to hire, who to assign to specific tasks, when a deputy would work, and issues regarding deputy discipline. Although the County Commission decided how many deputies the sheriff could hire, there is no evidence that the County Commission was free to delay or stop Spears from continuing to work unless the sheriff recommended that the County Commission should take such action. The evidence shows that the sheriff and the chief deputy, not the County Commission directly or indirectly, assigned work to Spears.

Also, although the County Commission passed policies that applied to certain county employees, the County Commission was powerless to force the sheriff's deputies to follow the rules it passed. Rather, the County Commission's rules applied to the sheriff's deputies if, and to

14

the extent that, the sheriff decided that the policies applied to the deputies.  See Mack v. Arnold, 929 So. 2d 480, 481, 483-84 (Ala. Civ. App. 2005) (county personnel manual does not apply to sheriff's deputies unless the sheriff says so); Lockridge v. Etowah County Com., 460 So. 2d 1361, 1363 (Ala. Civ. App. 1984) (county commission cannot establish work rules for sheriff's deputies or grant sheriff's deputies leaves of absence).  The sheriff attempted to apply the policies once, but it subsequently became clear that the County Commission could not do so on its own.

This factor weighs heavily against finding that the County Commission was Spears' "employer."

2.    **Whether the County Commission Had the Direct or Indirect Power to Hire, Fire, Modify the Employment Conditions or Determine the Pay Rates or Methods of Wage Payment for Spears**

Welch included the power to hire, fire, and modify employment conditions in its third factor.  Villarreal considered the power to hire and fire employees in its first factor, the power to control employment conditions in its second factor, and the power to determine pay rates and methods of payment in its third factor.

The record shows that the sheriff decided who to hire and fire.  The County Commission approved the sheriff's decisions.  There is no evidence tending to show that the County Commission ever interfered with the sheriff's decision to hire or fire a particular deputy, or that the County Commission could decide to hire or fire a particular deputy on its own.  There is also no evidence to show that the County Commission had any authority to modify Spears' employment conditions.

On the other hand,

15

> [P]ay rate refers not only to the amount of compensation to be paid, but includes benefits such as worker's compensation insurance and social security, as well as how these various payments are allocated. Method of payment refers to the basis upon which a worker is paid, for example, by the hour or by the piece.

Antenor, 88 F.3d at 935-36.

Although the court did not find any direct evidence tending to show which entity, the County Commission or the sheriff, decided upon the method of paying deputies, the County Commission did set the pay rates for the deputies. Still, the sheriff and his chief deputy set the schedules, which could impact how much money the deputies made. On the other hand, although the County Commission set the sheriff's budget, and altered the budget when the sheriff needed more money to pay his deputies overtime, the sheriff or his chief deputy were in charge of deciding whether the deputies would earn overtime. The sheriff also was the one who decided whether to award Spears additional overtime pay when Spears felt his paycheck did not fully compensate him.

As long as the County Commission provided the sheriff with a reasonable amount of funding, Etowah County Com. v. Hayes, 569 So. 2d 397, 398 (Ala. 1990) (county commission could not completely withhold funds from sheriff's department, effectively shutting it down), it could not be compelled to fund overtime for deputies when the sheriff exceeded his budget. Geneva County Com. v. Tice, 578 So. 2d 1070 (Ala. 1991) (county commission was not compelled to pay for deputy overtime when the sheriff exceeded his budget for this expense). See also Ball v. Escambia County Comm'n, 439 So. 2d 148 (Ala. 1983) (if sheriff exceeds his allotted funds for deputy overtime, commission can require sheriff to reallocate his budget to pay for the excessive overtime, rather than appropriating more money to the sheriff's office). Consequently, although the County Commission set the pay rates for the deputies, the sheriff had

the power to determine how much overtime his deputies could earn, subject to his ability to apportion his budget accordingly or to convince the County Commission to provide him with additional funds to pay for the overtime.

Most of the elements of this factor do not support the conclusion that the County Commission employed Spears. It could not hire, fire, or modify Spears' employment conditions. It did determine the pay rates or methods of wage payment for Spears, but the sheriff or his chief deputy exercised some control over Spears' income because they determined how much overtime he would work.

### 3.    The Degree of Permanency and Duration of the Relationship of the Parties

This factor "indicates the degree of permanency and duration of the relationship between the laborer and the alleged employer." Martinez-Mendoza 340 F.3d at 1212. In the context of agricultural workers, this factor is helpful to determine whether the workers work for the owner of the property and/or the entity supplying the labor. See id. Neither Welch nor Villarreal considered this factor. The court does not find that this factor is relevant to the employment arrangement at issue in this case.

### 4.    The Extent to Which the Services that Spears Rendered Were Repetitive, Rote Tasks Requiring Skills that Were Acquired with Relatively Little Training

"The lower the worker's skill level, the lower the value and marketability of his services, and the greater the likelihood of his economic dependence on the person utilizing those services." Id. There is nothing in the record tending to show how much skill it takes to be a sheriff's deputy. Still, the court finds that this factor weighs slightly against finding that the County Commission is Spears' "employer," because there are several law enforcement agencies,

including other sheriff's departments, in the state, indicating that Spears' skills were marketable.

### 5. Whether the Activities that Spears Performed Were an Integral part of the County Commissions' Overall Operation

"This factor is probative of joint employment because a worker who performs a routine task that is integral to the putative employer's business is likely to be dependent on the defendant's overall enterprises."  Beck, 391 F. Supp. 2d at 1192.

> A task or activity is considered "integral" to an employer's business when that employer "would be virtually certain to assure that the function is performed, and would obtain the services of whatever workers are needed for this function. Accordingly, the workers so engaged can reasonably anticipate that the work will be available for so long as the function in question must be performed."  In other words, to demonstrate economic dependency on [the County Commission], [Spears] had to show that [his] role as [sheriff's deputy] was "indispensable" to [the County Commission's] business.

Martinez-Mendoza, 340 F.3d at 1213.

Although it is clear that the County Commission is responsible for more than the functions the deputy sheriffs carry out, compare, e.g., ALA. CODE § 11-3-11 (1975) (powers of a county commission) with ALA. CODE § 36-22-3 (1975) (duties of the sheriff), the parties did not submit evidence or argument based on which the court can evaluate this factor in any significant detail.

### 6. Whether the Work Was Performed on the County Commission's Premises, Rather than on the Premises that Another Entity Owned or Controlled

This factor can be probative because, in relevant part, "a business that owns or controls the worksite will likely be able to prevent labor law violations, even if it delegates hiring and supervisory responsibilities to labor contractors."  Charles, 169 F.3d at 1333.  In Martinez-Mendoza, the court found that, although laborers worked on the putative employer's land, this factor carried little weight because the laborers spent most of their time on land not owned by the

putative employer and, when they were on the putative employer's land, their presence on the putative employer's land had no direct bearing on their work responsibilities. <u>Martinez-Mendoza</u>, 340 F.3d at 1214.

In this case, there is no evidence that Spears spent any of his working hours on the County Commission's property. Rather, Spears was a sheriff's deputy, who patrolled and was responsible for law enforcement duties throughout the county - not just on the County Commission's property. To the extent that Spears did spend any working time on the County Commission's property, there is nothing to show that his activities in that location were different from, or anything other than incidental to, the activities he performed while away from the County Commission's property. This factor does not provide support for the conclusion that the County Commission was Spears' "employer."

### 7. Whether the County Commission Undertook Responsibilities in Relation to Spears that Employers Commonly Perform

This factor looks to such activities as

> (1) preparing and/or making payroll records, (2) preparing and/or issuing pay checks, (3) paying FICA taxes, (4) providing workers' compensation insurance, (5) providing field sanitation facilities, housing or transportation, or (6) providing tools and equipment or materials required for the job.

<u>Martinez-Mendoza</u>, 340 F.3d at 1214.

Although the evidence does not show whether the County Commission provided transportation or the tools and equipment that Spears needed to perform his job duties, as opposed to providing the sheriff with the budget to control these expenses himself, this factor weighs in favor of finding that the County Commission was Spears' "employer" because the County Commission handled the remaining five activities.

**Conclusion on "Employer" Status**

The County Commission set the sheriff's budget and handled the administrative functions with respect to payroll and benefits. On the other hand, the sheriff and his chief deputy, within the framework of their budget, had total control over Spears' hours, work environment, advancement, and employment. The only time that Spears had any contact with the County Commission was when he had a question about one of the administrative functions the County Commission handled, such as how many vacation days he accrued. Whenever a decision had to be made that involved discretion, such as deciding whether Spears was due overtime when he complained that his paycheck was insufficient, the sheriff or the chief deputy made the decision.

The four factors in <u>Villarreal</u>, whether the County Commission could hire and fire Spears, whether it supervised and controlled Spears' schedule or conditions of employment, whether it determined the rate and method of Spears' payment, and whether it maintained Spears' employment records, are evenly split. The County Commission could not hire and fire Spears - it could only approve or disapprove of the sheriff's decisions to hire and fire. The County Commission did not supervise or control Spears' schedule or conditions of employment. On the other hand, the County Commission did determine the rate and method of payment to Spears and maintained his employment records. The <u>Welch</u> case found that the presence of the third factor from <u>Villarreal</u> was not sufficient to saddle a county commission with "employer" status in light of the fact that the remaining factors indicated to the contrary.

Neither party directed this court to any case, nor did the court's own research uncover any, in which a court decided that an entity that was completely uninvolved in the day-to-day activities of a plaintiff in an FLSA case was an "employer" based only on its involvement in

setting salary classifications and handling benefits and payroll.  Although the definition of "employer" does not turn on the common-law definition of the term, which looks to control and supervision, Antenor, 88 F.3d at 929, the entities that the courts find fall under the statutory definition of "employer" exercise some control and authority over the employees.  Charles, 169 F.3d at 1329-34; Antenor, 88 F.3d at 933-38.

To the contrary, Welch found that county commissioners sued in their official capacities were not employers even though they set the salary and job classification for the sheriff's dispatcher.  Welch, 57 F.3d at 1011.  Similarly, Perez explains that "a corporate officer with operational control of a corporation's covered enterprise is an employer" only if he "either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee."  Perez, 515 F.3d at 1160 (quotations and citations omitted).  See also Patel, 803 F.2d at 637-38 (same as Perez); Martinez-Mendoza, 340 F.3d at 1210-15 (Despite certain factors that pointed "toward a finding that [a company] was plaintiffs' employer jointly," the majority of the factors pointed "in the opposite direction," including the fact that the company "did not - and could not - assign laborers or tasks, dictate hiring decisions, design the laborers' management structure, govern the laborers' work schedule, or implement laborer discipline," did not "determine[] when they began working in the morning, when they took lunch or rest breaks, and when they quit for the day," and could not punish a laborer, justifying the conclusion that the company was not an "employer."); Aimable, 20 F.3d at 444 (entity was not "employer" because most, but not all, factors tended to show it was not "employer"); Beck, 391 F. Supp. 2d at 1191 (entity's preparation of payroll, direct payment of wages to employees, payment of taxes and worker's compensation insurance carried little weight because these functions were only

administrative and were outweighed by other factors).

The County Commission handled the rate and method of payment for deputies, offered and handled employment benefits, set the sheriff's budget and allotment for deputies, kept track of Spears' vacation days, and maintained many or all of Spears' employment records. Welch found that county commissioners were not an "employer" of a sheriff's dispatcher even though they set the salary and employment classification for the plaintiff's job. Welch, 57 F.3d at 1011. The County Commission also confirmed the sheriff's decisions to hire or fire specific deputies and implemented certain personnel policies that, considering the facts in the light more favorable to Spears, applied to sheriff's deputies. Still, although the County Commission confirms the sheriff's decision to hire and fire employees, the witnesses are clear that the power to make the decision to hire and fire is the sheriff's. In addition, there is nothing in the record to show that personnel policies, other than those that pertained to salary and benefits classifications, were ever applied against Spears, or that they could have been so applied without the sheriff's approval. Finally, the Geneva County Com. and Ball cases both provide that the County Commission cannot be compelled to pay overtime beyond the amount included in the budget it provides to the sheriff. Certainly the fact that the County Commission cannot be compelled to pay for overtime under state law bears on the "economic reality" of Spears' relationship with the County Commission. Villarreal, 113 F.3d at 205.

The great weight of the factors support the conclusion that the County Commission is not Spears' "employer" for purposes of liability under the FLSA. It cannot be liable, therefore, under the FLSA.

Spears attempts to get over this hurdle by advancing an "enterprise" theory of liability

and also by arguing that the County Commission should be collaterally estopped from arguing that it was not Spears' "employer" under the FLSA.  Neither argument has merit.

Starting with Spears' "enterprise" theory, Spears argues that he "may avail himself of the FLSA's protection-through his employer's status as an enterprise engaged in commerce."  (Doc. 101, p. 7, ¶ 15).  This argument has nothing to do with whether or not the County Commission is Spears' "employer," under the FLSA.  See, e.g., Patel, 803 F.2d at 637 ("[W]e hold that the enterprise analysis is different from the analysis of who is liable under the FLSA.  The finding of an enterprise is relevant only to the issue of coverage.  Liability is based on the existence of an employer-employee relationship.").

Turning to the collateral estoppel argument, Spears asserts that the County Commission is barred "from denying it is Plaintiff's employer because Defendant in state court has admitted to being Plaintiff's employer and allowed a judgment to be entered against it as Plaintiff's employer."  (Doc. 101, p. 11, ¶ 21).  The judgment on which Spears relies was entered as a consequence of a settlement agreement in which the County Commission agreed to pay Spears a certain amount of benefits pursuant to Alabama's worker's compensation law.  (Docs. 103-9 and 103-10).  Collateral estoppel, also known as issue preclusion, "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."  David Vincent, Inc. v. Broward County, 200 F.3d 1325, 1330 n.7 (11th Cir. 2000).

This court should look to Alabama law in order to determine whether collateral estoppel applies in this case.  Brown v. City of Hialeah, 30 F.3d 1433, 1437 (11th Cir. 1994); Vazquez v. Metropolitan Dade County, 968 F.2d 1101, 1106 (11th Cir. 1992).  Issue preclusion, or collateral estoppel requires the following elements: "(1) the issue to be precluded must have been the same

in the prior suit; (2) the issue must have been necessary to the prior judgment; (3) the issue must have been actually litigated and determined." Owen v. Miller, 414 So. 2d 889, 891 (Ala. 1981) (quotation and citations omitted).  See also State Dep't of Revenue v. Hoover, Inc., 993 So. 2d 889, 894-95 (Ala. Civ. App. 2007) (Collateral estoppel, or issue preclusion, requires "(1) that an issue in a prior action was identical to the issue being litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions.").

As the County Commission points out, there is nothing before the court to show that the issue of whether the County Commission was Spears' employer, under the worker's compensation statute or under the FLSA, was litigated in the worker's compensation case upon which Spears relies to make this argument.  Spears has not shown that the County Commission is collaterally estopped from arguing that it is not Spears' employer under the FLSA.

The motion for summary judgment is **GRANTED**.

**DONE and ORDERED** this 30th day of July, 2009.


/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE